May it please the Court, good morning. My name is Michael Burke and I am appearing on behalf of Mr. Halverson. I will keep track of my time and attempt to reserve two minutes for a rebuttal. Mr. Halverson is appealing both the District Court's finding that he violated three special conditions of his supervised release for possession of child pornography and also its subsequent imposition of some of the same as some new special conditions of supervised release. Concerning the violations found by the District Court, he asserts that the three conditions that he was found to have violated were on their face unconstitutional and therefore unenforceable. For the same reason, he asserts that the District Court erred in reimposing two of those conditions. He is also challenging the imposition of a substance abuse condition, which the government has conceded was improperly included, and a special condition prohibiting him from utilizing any means, by any means, any social networking forum. With the Court's permission, I would like to address first an issue that was raised for the first time by the government in its answering brief and then raised again on Friday with a 28-J letter. And that concerns the question of whether Mr. Halverson has waived his facial challenges to the conditions by failing to challenge them on direct appeal. And the answer to that, for a few reasons, is no. First and foremost, that is not the law of the Ninth Circuit. The law of the Ninth Circuit has always been that a defendant may raise a challenge to a condition of supervised release on direct appeal. It has never been that he or she must do so. It is just not the law of the Circuit. It is true that other circuits have addressed the issue and reached a different conclusion, but that is not the law of the Ninth Circuit. Mr. Burke, isn't the policy, though, of raising the objection at the earliest time to give the District Court an opportunity to correct whatever the error is? And here, he was given an opportunity to have a hearing, but he waived it. So why shouldn't that waiver, just like every other waiver of constitutional challenges, be binding on him? Well, Your Honor, even when a defendant pleads guilty and issues a plea agreement with a waiver of appeal, they may still appeal if their sentence is unconstitutional, if it violates the Constitution. Right. I agree. But I'm assuming at the time that the initial conditions were entered, the District Court inquired of the defendant whether or not he had any objections to the conditions, and apparently none were made. And he didn't raise those challenges on his direct criminal appeal. So why should we countenance an appeal now, which is essentially blindsiding both the court and the government with challenges that should have been raised much earlier? Well, Your Honor, I would give a few answers to that. First, factually, Mr. Halverson pled guilty to one count of possession of child pornography. He was sentenced in the United States District Court for the Southern District of Texas, which imposed different conditions. It was when he relocated to Arizona that the conditions that we are challenging here were added. He did waive his right – you're correct, Your Honor – he waived his right to a hearing on those matters. But, again, under the Ninth Circuit law as it stands now, he was not required to appeal that. And I think it's a policy matter, too, Your Honor. Well, now, wait a second. There's a difference, though, between a timely objection and a waiver of a hearing at which objections could be raised, is there not? Are you challenging the voluntariness of the waiver? Is that your argument? Because he clearly waived the opportunity to raise the arguments then that you now wish to raise here. Your Honor, he did waive that when he signed the waiver of his right to a hearing. But our position is, under Ninth Circuit law, he did not raise – he did not waive his chance to challenge the constitutionality of those conditions. How is that – what I don't understand about your argument, Mr. Burke, is how is that any different from a waiver of a constitutional challenge under the Fourth Amendment to illegally seized evidence or Fifth Amendment to incriminating statements? We accept those kind of waivers all the time. Why should we not enforce the waiver here? Well, there are – and I don't mean to be obtuse, Your Honor. I may not be understanding your question exactly, but we – this court also will examine a case on appeal when the defendant has waived a right if it goes to the legality of the sentence that was imposed. But even more point to the case before us now. This issue is waived by the government. This matter was fully litigated before the district court with the eager participation of the government. And for them to come forward now and say that this was untimely and waived is – it is too late. It's a waiver of waiving. So that's going to be my question for you and for government counsel, what I'll call the St. Clair argument because that's the case that they're citing. So the St. Clair argument was not made by the government before the district court. It was made for the first time as far as you're concerned in the answering brief. Yes, Your Honor. It was made for the first time in the answering brief, I guess. With regard to the conditions themselves, the first condition concerns the sexually explicit materials limitation. And our argument is – and let me give some factual background. That condition was imposed by this district in 2019 or – excuse me, by Texas in 2019 and this district in 2020 when Mr. Halverson moved here. That condition, as it read, was in facial violation of this court's decision five years earlier in NERC or NERCI, which said that a condition that relies solely on the definition of obscene material under 2256-2 is impermissible under the First Amendment. That is the condition that we have here. Our argument is that the government – that the district court tried to save the condition by interpreting it inconsistently with NERCI, but because Mr. Halverson had a due process right, as does any criminal defendant, to know what the conditions are that may land him or her in jail, that it was too late in this case to do so. So would you concede that if the condition explicitly said child pornography, that that would solve the constitutional issue? Your Honor, if the condition solely limited Mr. Halverson's ability to view child pornography, that would not be unconstitutional. I mean, the reason I ask the question is in NERCI we essentially – I don't know quite how you would describe it – we essentially read the challenge or corrected the flaw by saying, well, what we really meant was child pornography, and we affirmed. So why shouldn't we do the same thing in this case? Because that's not what the district court said, and that's not what the condition was intended to prohibit. It's intended to prohibit even explicit sexual activity involving adults as well. But haven't we upheld that for certain types of offenders? You can't have access to any kind of certain types of pornography, whether it's child or adult. Yes, this court has upheld those types of conditions before. The problem in this case is the condition was on its face relying on a statute that does not apply to adult sexual explicit conduct. And that was – so therefore on its face it was an invalid condition. I don't want to cut anyone short, but I – And I'm not quite sure if it fits, but let me ask it anyway. If the offender is caught with material that clearly is impermissible, child pornography, does he have standing to raise a constitutional facial challenge? Yes, Your Honor, he does. A condition that violates the Constitution, whether it be due process or the First Amendment, is invalid ab initio. It is invalid to begin with. He has that. So he may not be able to challenge it as applied to him, but he can still challenge it as it might be applied to others? Yes, Your Honor. Okay. No, no, excuse me. I'm sorry. He may be able to challenge it as it applies to him because it's facially invalid. He has the standing to say I was – I had imposed upon me a constitutionally invalid condition. Okay. I'll give you two minutes. Unless you want to finish up any last comment, I'll give you two minutes for rebuttal. No, thank you, Your Honor. Thank you, counsel. Good morning, Your Honors, and may it please the Court. My name is Krista Lanham. I'm an assistant United States attorney from here in Phoenix, and I represent the United States. I want to get back to the facts. The clock is frozen. There we go. I want to actually start with the facts and procedures of what happened here in this case. After agreeing to be subject to the conditions and explicitly warned by the probation officer that if his behavior continued, he was going to be revoked, the defendant then possessed actual pornography on an unauthorized cell phone that he hid from the probation office up aloft in an outbuilding on his ranch hidden in an RFID shielding bag that didn't allow its radio frequency to be detected by the probation office. When the probation office then revoked him, as it said that it would, he argued then for the first time, as he does now, that the conditions were facially unconstitutional. If this court allows this type of challenge to be made at a revocation proceeding, it gives any defendant the incentive to agree to conditions, lie in wait, knowing that they are unconstitutional but not raise an objection to them, and then possess all of the pornography and all of the devices that he wants to possess, knowing that his conduct is immune to revocation. That can't be the law, and it's not the right result here for two reasons. First of all, the defendant waived this, as I think Judge Tallman's questions were getting to. He both agreed to the condition below, and he failed to challenge it on direct appeal. I want to answer Judge Owen's question first about whether we have waived that. First of all, it's black letter law in this court that a district court's decision can be affirmed for any basis in the record. The cases that the defendant cited, Tokatli, I think is the name of the main one, go to cases where the government failed to raise an argument in its answering brief. That's not what happened here. We fully briefed the argument in the answering brief. But second, we actually preserved the issue below. And if you look at 2 ER 195, we argued that all of the case law that the defendant cited pertained to contested conditions and not those that were imposed by consent through a waiver. So that's sufficient under this court's case law, which holds that it's claims and not arguments that are waived, to have preserved the issue here. But I know in your answering brief you didn't cite 2 ER 195, correct? We did, Your Honor. In the answering brief you did? I believe that we did. Well, I'll take your word for it. I just ran a search for 195, and it didn't appear. So I will take your word for it, then, Your Honor. It is there in the record at 2 ER 195. And perhaps we may not have anticipated the waiver of the waiver argument, because it is black-letter law that this court can affirm for any reason that is presented by the record. Mr. Burke just stood up here and said that it is this court's case law that a defendant can challenge facially a condition of supervised release on appeal from a revocation proceeding. And that's just not the case. What he cites for that is an unpublished mem disco in a case called Last Star. And if you actually look at Last Star, it cites two cases for that proposition, King and Antelope. Neither of those cases actually held that a defendant could facially challenge on an appeal from revocation the facial constitutionality of a condition. And that goes to another point that Mr. Burke made, which is that these conditions were void ab initio. If these conditions were void ab initio, why didn't the defendant challenge them when they were actually imposed, if the challenge is so facially obvious that it can't apply to anybody? So if you look at this court's cases in, for example, Kate and Gross, I agree that they don't go directly to the question of whether an appeal from revocation is a point at which you can challenge the legality of a supervised release condition. But they certainly contain language that suggests that. And then looking at other cases, for example, Daniels, this court refused to hear challenges from a condition that the defendant agreed to. So the St. Clair argument, Key, which we cited in the 28J letter, all of these cases distinguish between facial challenges and as-applied challenges. I absolutely understand why an as-applied challenge can't be raised until a revocation proceeding. But a facial challenge, which is void ab initio, can be raised ab initio. And so for that reason, we believe that his challenge was waived in this case. Can you go back to that 2 ER 195? Sure. Can you tell me the lines that you're referring to? Yes, lines 10 to 11. So it says defendant argues, so line 9, defendant argues it is the government's burden to show the reason for the imposed special conditions. But all the case laws cited, I think it's by the defendant, pertain to condensing conditions, not those imposed by consent through a waiver. So that's the phrase you say preserves the argument. Yes, Your Honor. Okay, thank you. We also, I think, if the court has no other questions on the waiver, I can get to the re-imposition of the conditions. We have agreed that a certain, obviously, the condition that is facially inconsistent with what the court pronounced at judgment in the case should be remanded. And obviously, the District of Arizona, as I noted in the 28-J letter, has new conditions, which I think help to resolve most of the challenges here. I acknowledge that the social media condition actually looks quite similar to what was imposed before. The new social media condition looks very similar. But this court held in Wells that, essentially, Packingham is an opposite to this. And Wells was a broader condition than the social media condition that the defendant's challenging here because Wells was a complete internet prohibition. So we would ask that the court affirm and just remand for the limited purpose of correcting that judgment, but also permit the district court to impose the new conditions in the District of Arizona. All right, seeing no further questions. We ask that you affirm. Like I said, there are no bonus points for using all your time. Counsel? Thank you. With regard to 2 ER 195 and the language that the government relies upon, that pertains to a different issue that was argued before the district court. We are arguing facial invalidity here. There was also an argument that was made that was unsuccessful and not raised in our appeal. That even though Mr. Halverson had signed the waiver, that the district court was under some obligation to orally indicate or in writing why the conditions were being imposed. That is what that language is referring to. And again, I would. Well, counsel, as I understand it, he the whole thing arose. He got sentenced to 60 months by the Southern District of Texas, but he wanted to be released not to Texas, but to Arizona, where he has family and property. And so in order to extend the courtesy supervision to transfer it from Texas to Arizona, he was presented with what I'll call the standard conditions that Arizona federal district courts impose. Is that correct in terms of how this consent form was created? Yes, sir. Yes, your honor, that is correct. So he consented, he waived because he wanted to be supervised in Arizona. And now he wants to come in and say, well, wait a minute, now that you've caught me in violation of the conditions, I want to challenge them as facially unconstitutional. What's wrong with this picture, counsel? The suggestion that criminal defendants on supervised release are lying in wait so that they can challenge their conditions is just not reasonable. You have he's Mr. Halverson. By the time this case was decided, he was sentenced to time served for this violation. He'd been in prison for jail for almost eight months. There's no great advantage to him to do that. And his conditions are not. Well, they were standard under Arizona. But, for example, the condition that violates NERCI was one of the standard conditions at this court that the probation office was including in 2020, five years after NERCI was decided. I see I'm over my time. So unless there are any other questions, I will ask that the court reverse. Thank you very much, counsel. Thank you both of you for your briefing and argument in this case. One quick note. Judge Gregerson one time walked up to me and said, you know, I was in England and every time I was I was in England, every time we visit anywhere, I would always see your name everywhere. I would see Watford, Watford, Watford. So you were not the first person to have called me Judge Watford. And with that, we are adjourned for the day. Thank you.
judges: TALLMAN, OWENS, BADE